UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- X
                                                        :
THE AVON COMPANY f/k/a NEW AVON                         :
LLC and LG H&H COMPANY, LTD.,                            :
                                                        :
                                      Plaintiffs,       :
                                                        :
                  -against-                             :
                                                        :
FAREVA MORTON GROVE, INC. and                           :
FAREVA S.A.,                                            :
                                                        :
                                      Defendants.       :
------------------------------------------------------- X
```

**ORDER GRANTING PARTIAL
SUMMARY JUDGMENT**

22 Civ. 4724 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs The Avon Company, formerly known as New Avon LLC, and LG H&H
Co., Ltd. (collectively "Avon"), sellers of beauty products, brought this suit against Defendants
Fareva Morton Grove, Inc. and Fareva S.A. (collectively "Defendants"), seeking declaratory and
injunctive relief and damages, caused by Fareva's breach of a long-term Manufacturing and
Supply Agreement (the "MSA") (ECF No. 7-1).  On June 30, 2023, Avon filed a motion for
Partial Summary Judgment precluding Fareva from relying on a force majeure defense to excuse
any breach of the MSA after May 4, 2020, or, in the alternative, compelling Fareva to respond to
Avon's Third Set of Interrogatories seeking information concerning Fareva's force majeure
defense.  For the reasons discussed below, I hold that Fareva is precluded from asserting a force
majeure defense to excuse any breach of the MSA between May 4, 2020 and December 17,
2022.

## BACKGROUND

I.      *The Manufacturing and Supply Agreement*

Avon sold the Morton Grove facility to Fareva in December 2018 pursuant to an Asset Purchase Agreement. ¶ 20. The parties also simultaneously executed the MSA, under which Fareva agreed to manufacture, test, and supply virtually all of Avon's beauty products for a 10-year period, with an option to extend for an additional five years. ¶ 20. The MSA provides terms favorable to Avon, including terms requiring Fareva to manufacture Avon's products at a discount rate, in exchange for Avon's sale of the Morton Grove Facility for a substantially lower price than the value of the facility,.

The MSA contains a provision relieving Fareva of any liability for failing to perform if such non-performance is directly caused by a "Force Majeure Event," which the MSA defines as follows:

> Neither Party shall be held liable or responsible to the other Party or be deemed to have defaulted under or breached this Agreement for failure or delay in fulfilling or performing any term of this Agreement to the extent such failure or delay directly results from fires, floods, earthquakes, embargoes, shortages, strikes, epidemics, quarantines, war, acts of war (whether war be declared or not), terrorist acts, insurrections, riots, civil commotion, acts of God, or acts, omissions, or delays in acting by any Governmental Authority, in each case to the extent beyond the reasonable control of the non-performing Party of any term of this Agreement (each, a "Force Majeure Event").

MSA § 14.10. Notice is required to invoke the force majeure provision:

> The non-performing Party shall notify the other Party of a Force Majeure Event promptly after the occurrence of such Force Majeure Event by giving written notice to the other Party stating the nature of such Force Majeure Event, its anticipated duration, and any action being taken to avoid or minimize its effect. The suspension of performance shall be of no greater scope and no longer duration than is necessary and the non-performing Party shall use commercially reasonable efforts to promptly remedy its inability to perform and recommence performance.

*Id.* The MSA requires "[a]ll notices and communications" given to Avon to be delivered to specific parties, including Avon's COO, Head of Supply Chain, and General Counsel. *Id.* § 14.4.

To ensure that Fareva's resources are not applied to other of its customers during a Force Majeure Event and a timely resumption of production to satisfy Avon's purchase orders, Section 3.5 provides in relevant part:

> If [Fareva] reasonably believes that a . . . Force Majeure Event affecting Supplier is imminent or likely to occur in the future, [Fareva] shall notify Purchaser thereof as soon as commercially practicable. In the event of a . . . Force Majeure Event, (i) [Fareva] shall resume supply of the affected Products as soon as commercially practicable, (ii) [Fareva] shall not allocate any capacity to other Persons unless and until one hundred percent (100%) of [Avon's] Orders are being consistently fulfilled, (iii) [Fareva] shall keep [Avon] regularly apprised of the status of [their] efforts to resume supply of the affected Products, [and] (iv) at [Avon's] request, [Fareva] shall use commercially reasonable efforts to engage an alternative supplier of the affected Products . . ..

MSA § 3.5.

Finally, Section 14.2 provides that New York law governs.  MSA § 14.2.

II.   *Fareva's April 2020 Force Majeure Notice and Termination*

On April 9, 2020, Fareva notified Avon that it was "experiencing disruption of [its] labor force & supply-chain due to the global coronavirus pandemic and the measure issued by the state of Illinois . . . [that] require[d] all Illinoisans to stay at home[.]"  Fareva said it was "working hard on it in order to carry on with [its] activities as soon as possible."  Approximately one month later, on May 4, 2020, Fareva, declaring the Force Majeure Event as terminated, sent another letter to Avon, stating:

> As per our letter dated April 9th 2020, we informed you of the occurrence of a Force Majeure event affecting activities and our business relationship as of April 9th, 2020. We are pleased to inform you that our site is back to nearly normal operation and not under a Force Majeure situation anymore from the May 4th 2020 on. We therefore declare the Force Majeure event as terminated and proceed to resume our activities and the complete performance of your orders.

[cite]. The letter also informed Avon that some of Fareva's suppliers were still experiencing manufacturing difficulties activities affecting Fareva's supply chain. *Id.*

III.   *Fareva's Termination of the MSA and Failure to Invoke Force Majeure*

On March 29, 2022, citing Avon's failure to pay a November 2021 invoice, Fareva gave Avon 30-day's written notice of early termination of the MSA. Although the MSA required six months of transition support (the "Transition Period"), Fareva notified Avon that if they failed to pay somewhere between $8 and $21 million by June 3, 2022, Fareva would cease production of Avon's products. In response, Avon filed this suit and sought an injunction requiring Fareva to continue performing its contractual obligations. Fareva raised several arguments in opposition. None were based on the occurrence of a Force Majeure Event. At oral argument on Avon's motion for a preliminary injunction on June 8, 2022, Fareva explicitly stated that a Force Majeure Event had not occurred. I entered a preliminary injunction order on June 21, 2022, requiring Fareva to continue performing its duties under the MSA through the ends of the Transition Period on October 21, 2022. (ECF Nos. 27, 33.)

Avon filed a motion for contempt in August 2022, alleging that Fareva failed to perform as required by the preliminary injunction. Again, Fareva did not argue that a Force Majeure Event had occurred, nor did they notify Avon that they were invoking the force majeure provision of the MSA. When Avon renewed its contempt motion in November 2022, once again Fareva chose not to argue that performance was excused under the MSA due to a Force Majeure Event.

On December 5, 2022 I held oral argument on Avon's second contempt motion. I repeatedly asked Fareva's counsel why Fareva had not declared force majeure:

> THE COURT: Why did [Fareva] not call force majeure?
>
> MR. LACY: Your Honor, because calling force majeure isn't going to result in the material suppliers providing the materials any sooner so it's not going to solve the supply chain issues.

(ECF No. 136-7, at 15:20-24.)

THE COURT: So, I don't understand, Mr. Lacy, why you didn't invoke Section 14.10 . . . Why didn't you invoke that?

MR. LACY: Your Honor, for a couple of reasons. One, we were still able to produce a substantial amount of product for Avon. Second, Avon, if we were to declare a force majeure, Avon would demand that we stop producing product for other customers, which again won't solve the supply chain issues, but will in turn have even more of a dramatic effect on the finances of our client.

(*Id.* at 16:8-21.)

THE COURT: . . . Why don't you invoke 14.10? It is right on point.

MR. LACY: I understand that, your Honor. I understand that. But, again, if we invoke force majeure, Avon will say we have to shut down the plant for all production.

(*Id.* at 17:12-16.)

THE COURT: . . . [W]hy didn't [Fareva] call force majeure? I have asked you that question every time we met.

MR. LACY: Because, your Honor, if we claim force majeure, Avon, per Section 3.5, is going to say we cannot produce for any other customer at the facility.

(*Id.* at 18:14-18.)

By letter on December 17, 2022, Fareva issued a "Force Majeure Notice" pursuant to § 14.10 of the MSA based on supposed "supply chain shortages beyond [its] reasonable control." The letter was sent to the individuals required under § 14.4 of the MSA and stated that it was "without prejudice to Fareva's right to assert that the condition of force majeure ha[d] existed for an extended period prior to the date of th[e] notice, as indicated in [Fareva's] previous correspondence." Fareva cited to several letters it sent to Avon between April 2021 and February 2022 that referenced force majeure. The cited correspondence included an April 30, 2021 letter claiming that Avon's calculation of performance-related fees due to Avon for the year 2020 were unreasonable because Fareva was not "able to perform [its] contractual duties" due to a "Force Majeure" situation (ECF No. 136-9); two letters, in November and December 2021, in

which Fareva claimed it could not obtain raw materials for, and ultimately refused to accept, five purchase orders due to the "impact of a Force Majeure Event" (ECF Nos. 136-11, 136-12); and two letters, in January and February 2022, challenging Avon's calculation of performance-related fees owed for 2021 and the beginning of 2022 (ECF Nos. 136-13, 136-14). These letters were not addressed to the individuals identified in § 14.4 of the MSA.

## DISCUSSION

Summary judgment is appropriate "only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. Case 22-138, Document 81, 08/07/2023, 3552202, Page2 of 16 3 2012) (quoting Fed. R. Civ. P. 56(a)). The Court must ""resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (internal quotation marks and citation omitted).

There is no genuine dispute that Fareva expressly terminated the April 9, 2020 force majeure notice on May 4, 2020. The May 4, 2020 letter stated: "We are pleased to inform you that our site is back to nearly normal operation and not under a Force Majeure situation anymore from the May 4th 2020 on. We therefore declare the Force Majeure event as terminated[.]" Fareva's contention that the letter served as merely a partial termination of their April force majeure notice cannot be reconciled with the express language of their May 4, 2022 letter, nor the admissions of counsel that followed.

There is also no genuine dispute that Fareva failed to re-invoke the Force Majeure provision of the MSA between May 4, 2020 and December 17, 2022. Although Fareva made sporadic references to a "Force Majeure Event" in several letters during the interim period, those letters were not addressed to the individuals identified in § 14.4, nor did they specify the nature or scope of any supposed Force Majeure Event, the anticipated duration of such an event, or any

6

actions taken to avoid or minimize the effects of such an event, as required by § 14.10. Force majeure clauses are narrowly construed, and where a contract requires notice for the invocation of a force majeure defense, notice must be given to excuse performance. *In re The Containership Co.*, 2016 WL 2341363, at *9 (Bankr. S.D.N.Y. Apr. 29, 2016); *Vitol S.A., Inc. v. Koch Petroleum Grp., LP*, 21842005 WL 2105592, at *11 (S.D.N.Y. Aug. 31, 2005).

Throughout the proceedings in this case, including Avon's motion for a preliminary injunction and two motions for contempt, Fareva failed to claim that it was experiencing a Force Majeure Event within the meaning of the MSA. In fact, Fareva affirmatively admitted to the Court on multiple occasions that a Force Majeure Event had not occurred and that it had not invoked the force majeure clause of the MSA. These are binding judicial admissions. *See Sasson v. Mann*, 2019 WL 3532155, at *12 (S.D.N.Y. Aug. 2, 2019). And Fareva's reason for failing to invoke force majeure is clear from the December 5, 2022 oral argument on Avon's renewed contempt motion. Counsel for Fareva stated, at least twice, that Fareva decided not to invoke force majeure because it understood that, based on Section 3.5(ii) of the MSA, it would not be permitted to allocate any production capacity to other customers during a Force Majeure Event. This was not a consequence that Fareva was prepared to face. Fareva deliberately chose not to invoke the force majeure provision due to its fear of the potential adverse effects of such invocation.

Accordingly, I hold that Fareva is barred from invoking a force majeure defense to excuse any failure to perform its obligations under the MSA between May 4, 2020 and December 17, 2022. The parties are reminded of the schedule, set at the status conference held on September 11, 2023, for supplemental briefing regarding damages and entitlement to additional discovery. In their briefs, the parties shall identify any discovery needed to assess the

adequacy of Fareva's December 17, 2022 force majeure notice.  The Clerk of Court shall

terminate the open motion at ECF No. 134.

       SO ORDERED.

Dated:     September 2, 2023
           New York, New York

                                   ALVIN K. HELLERSTEIN
                                 United States District Judge