UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                     :

THE AVON COMPANY, f/k/a NEW AVON     :     **OPINION AND ORDER**
LLC, and LG H&H COMPANY, LTD.,        :     **REGARDING SCOPE OF**
                                       :     **DAMAGES**
                       Plaintiffs,   :

            -against-              :
                                         :     22 Civ. 4724 (AKH)
FAREVA MORTON GROVE, INC. and        :
FAREVA S.A.,                             :

                                         :
                       Defendants.  :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

     In an order on October 28, 2025, I asked the parties to brief whether lost profits are recoverable as damages, whether evidence of lost profits is admissible to support the reasonableness of the liquidated damages provisions, and the extent damages are recoverable pursuant to their Manufacturing and Supply Agreement (the "MSA"). ECF No. 464. For the reasons discussed below, I hold that the MSA specifically precludes claims for lost profits as actual damages, that lost profits, both anticipated at the time of contracting and at the breach, are admissible to demonstrate the reasonableness of the liquidated damages provision, and I limit damages temporally in the ways stated below.

## I.     Lost profit damages are unavailable under the MSA.

     Avon Company, LLC and LG H&H Company, Ltd. ("Avon") argue that if the Court determines that liquidated damages are unavailable, that it is entitled to lost profits as general damages for breach of contract. Fareva Morton Grove, Inc. and Fareva S.A. ("Fareva") contend that lost profits are defined in the MSA as consequential damages and are not recoverable—

"neither Party shall be liable to the other Party for any indirect, special, unforeseen, consequential damages, including lost profits."  MSA § 12.4.

The MSA in Section 12.4 states:

> **Section 12.4 Consequential Damages.** Except to the extent arising out of or related to (i) the gross negligence, willful breach or willful misconduct of a Party in performance of its obligations under this Agreement, (ii) a breach of Article XI by a Party, (iii) a Party's indemnification obligations with respect to third-party claims under Section 12.1 or Section 12.2, (iv) any recall of a Product, or (v) a Party's infringement of a third-party's Intellectual Property, neither Party shall be liable to the other Party for any indirect, special, unforeseen, consequential damages, including lost profits or damage to image or goodwill, suffered or incurred by the other Party arising under or in connection with this Agreement or as a result of any activities under this Agreement. Notwithstanding the foregoing, nothing in this Section 12.4 is intended to or shall limit Purchaser's right to receive any Penalty, Rebate, In Full Credit, OT Credit, Discount Payment, or Early Termination Payment.
>
> MSA § 12.4.

The MSA is governed by New York law.  MSA § 14.2.  Under New York law, "[l]ost profits may be either general or consequential damages."  *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 806, 11 N.E.3d 676, 680 (N.Y. 2014).  General damages "are the natural and probable consequence of the breach of a contract."  *Id.* (citations omitted).  Lost profits are recoverable as general damages when they are the "direct and immediate fruits of the contract."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 n.20 (2d Cir. 2007).  Under *Biotronik*, courts are to "look at the underlying agreement to determine whether lost profits were general damages."  *Biotronik*, 22 N.Y.3d at 807.

Applied here, I must look at the terms of the MSA to determine whether lost profits are considered general damages.  I hold that the MSA defines lost profits as consequential damages.  Section 12.4 defines lost profits as a part of consequential damages and precludes the recovery of consequential damages.  Avon's argument that such lost profit damages are limited only to those

2

lost profits that are "indirect, special, and unforeseen" is unavailing.  ECF No. 464 at 18.  The language Avon points to does not qualify, and thereby limit, the scope of lost profits, rather it defines lost profits as falling within that list.

However, Section 12.4 does not apply in the event of "gross negligence, willful breach or willful misconduct of a Party in performance of its obligations under this Agreement."  MSA § 12.4.  Avon argues that such an exception applies because Fareva acted in bad faith and willfully breached the contract.  New York imposes a high standard for what constitutes a willful act in the context of limitation of liabilities clauses like Section 12.4.  *See Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc.*, 643 N.E.2d 504 (N.Y. 1994).  Under *Metropolitan Life*, "courts should honor" limitation on liability provisions because they "represent[] the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed."  *Id.* at 507.  In assessing such provisions for willful conduct, courts will "narrowly exclude from protection truly culpable, harmful conduct, not merely intentional nonperformance of the Agreement motivated by financial self-interest."  *Id.* at 508.

Avon's assertions that Fareva gave priority to higher value customers, terminated the contract, and provided excuses for non-delivery (ECF No. 464 at 21) are insufficient to meet this high standard for willful misconduct.  Rather these allegations demonstrate that Fareva acted in its economic self-interest in relation to the termination of the contract.  *See id.* at 509 ("conduct necessary to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional *wrongdoing*") (citing *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365).  Therefore, as a matter of law, the willful exception in the provision does not apply, and Avon is precluded from seeking lost profit damages.

II.     **Evidence of lost profit damages are available as proof of liquidated damages.**

Fareva contends that Avon should not be permitted to present evidence of its asserted lost profit damages in support of the reasonableness and enforceability of the MSA's liquidated damages provision.  I disagree.

"[A] liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement."  *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (N.Y. 1977).  Under New York law, "a liquidated damages provision will be valid if reasonable with respect to *either* (1) the harm which the parties anticipate will result from the breach at the time of contracting or (2) the actual damages suffered by the nondefaulting party at the time of breach."  *Equitable Lumber Corp. v. IPA Land Develop. Corp.*, 38 N.Y.2d 516, 521 (N.Y. 1976) (emphasis in original).  Under this standard, evidence of lost profits, anticipated and actual, is relevant to defining the enforceability of the liquidated damages provision.  *See Photography by Brett Mathews, Inc. v. Solomon*, 41 Misc. 3d 56, 59, 975 N.Y.S.2d 832, 835 (App. Term 2013) (considering lost profits in the assessment of reasonableness of a liquidated damages provision).

Therefore, Avon is permitted to present evidence of lost profits damages at the bench trial on the enforceability of liquidated damages.

III.    **Temporal scope of actual and liquidated damages.**

I asked the parties to brief the temporal scope of both liquidated and actual damages.  I hold as follows.

**Net Service Level Payments**.  The parties dispute the applicable period for the calculation of Net Service Level Payments ("NSLPs") pursuant to Schedule D of the MSA.  The parties agree that the relevant time period begins on May 4, 2020, when Fareva's pandemic-related force

4

majeure declaration concluded.  Fareva argues that it retains a force majeure defense to liability for late deliveries under Schedule D beginning December 17, 2022.  ECF No. 488 at 21.  Avon contends NSLPs should be calculated through May 2023 when Fareva stopped delivering products under the agreement and that Fareva's December 2022 force majeure was invalid.  ECF No. 464 at 23.

I previously held that Fareva's December 17, 2022 force majeure notice created triable issues of fact as to the validity of that declaration through the end of contractual performance in May 2023.  ECF No. 192.  However, Avon represented to the Court that it would "forgo any claim to NSLPs that accrued after [December 17, 2022]."  ECF No. 201 at 1 n.1.  Therefore, NSLP payments, if deemed enforceable, shall be calculated from May 4, 2020 to December 17, 2022.

**Early Termination Fee**.  If the Early Termination Fee, MSA § 13.3(d), is found to be valid, the parties agree that the term of the fee runs until 2028 but disagree as to when the term begins.  The MSA states that the provision applies "[i]n the event that Supplier provides Purchaser with an Early Termination Notice in accordance with Section 13.3(c)(ii), within forty-five (45) days after the date of the Early Termination Notice."  MSA § 13.3(d).  Section 13.3(c)(ii) allows early termination for convenience "upon two (2) years prior written notice" provided that the notice may not be effective until at least January 1, 2024.  MSA § 13.3(c)(ii).

Fareva purported to terminate the MSA on March 29, 2022, which if treated as an early termination would set the earliest effective date as January 1, 2024.  Fareva contends that its attempted termination in March 2022 did not conform to the formalities required for early termination under the MSA and thereby did not trigger the Early Termination Fee.  ECF No. 488 at 22.

When a party terminates for a breach of contract, and there was no breach, the termination can be converted into one for convenience. Therefore, Fareva's termination triggers the application of the Early Termination Fee, which states that the earliest date of termination is January 1, 2024. Therefore, if found enforceable, the Early Termination Fee shall be calculated for the years from January 1, 2024 to December 31, 2028.

**Actual Damages**. Avon contends that it can assert contract damages through the end of the term of the MSA on December 31, 2028. ECF No. 464 at 24. Fareva contends that calculating damages through that date is speculative. ECF No. 488 at 22.

"[D]amages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384 (2d Cir. 2006). Typically, damages are calculated as the difference between the contract price and the "cover" price, that is the market price of the goods Fareva failed to deliver, UCC § 2-712, through the remaining term of the contract. Generally, if there is an effort to recover additional damages, they may not be speculative and must be reasonably ascertainable. *Tractebel Energy Mktg.*, 487 F.3d at 110 ("damages, however, must be not merely speculative, possible, and imaginary, but they must be *reasonably certain* and such only as actually follow or may follow from the breach of the contract."). Therefore, I hold that Avon is entitled to present evidence of actual damages through December 31, 2028, in accordance with the limitations on lost profits in this order, subject to later limitation if those damages prove too speculative.

## CONCLUSION

For the aforementioned reasons, I hold the following: if I find the liquidated damages provisions unenforceable, Avon's actual damages may not include lost profits; evidence of lost

profits damages is admissible in relation to the reasonableness of the liquidated damages provisions; NSLP damages shall be calculated from May 4, 2020 to December 17, 2022; Early Termination fee shall be calculated from January 1, 2024 to December 31, 2028; and if liquidated damages are not available actual damages shall be calculated through December 31, 2028.

SO ORDERED.

Dated:        January 16, 2026                    /s/ Alvin K. Hellerstein
              New York, New York            ALVIN K. HELLERSTEIN
                                            United States District Judge