UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

THE AVON COMPANY, f/k/a NEW AVON LLC, and LG H&H COMPANY, LTD.,

Plaintiffs,

-against-

FAREVA MORTON GROVE, INC. and FAREVA S.A.,

Defendants.

--------------------------------------------------------------- X

**ORDER DENYING MOTIONS TO EXCLUDE EXPERT TESTIMONY OF ANTHONY CAMPANELLI AND BRENT BERSIN**

22 Civ. 4724 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs The Avon Company and LG H&H Company, Ltd. ("Avon," or Plaintiffs) brought this suit against Fareva Morton Grove, Inc. and Fareva S.A. (collectively "Fareva," or Defendants) for a breach of their long-term Manufacturing and Supply Agreement (the "MSA"). The case is proceeding to a bench trial on the limited issue of whether two liquidated damages provisions in the MSA are enforceable. Fareva moves to exclude the testimony of Avon's two experts, Anthony Campanelli and Brent Bersin on the grounds that their testimony is based on unreliable data, within the meaning of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). For the following reasons, the motions are denied.

Federal Rule of Evidence 702 regulates the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702.

Rule 702 assigns courts "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. In assessing reliability, courts look at the factors outlined in Rule 702 and a number of considerations identified in *Daubert*, namely:

> (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review or publication;" (3) the technique's "known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.
>
> *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert*, 509 U.S. at 593-94).

However, "*Daubert*'s list of specific factors, ... neither necessarily nor exclusively applies to all experts or in every case. Rather the district court's inquiry into the reliability of expert testimony under Rule 702 is a flexible one." *Id.* (quotation marks and citations omitted). Further, exclusion is the exception rather than the rule. *Daubert*, 509 U.S. at 596 ("[T]he traditional and appropriate means of attacking shaky but admissible evidence" is not exclusion, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."). "Under *Daubert*, expert testimony should be excluded only if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Hewitt v. Metro-North Commuter Railroad*, 244 F. Supp. 3d 379, 385 (S.D.N.Y. 2017) (quotation marks omitted).

## I. Mr. Campanelli's testimony is permissible and based on reliable data.

Mr. Campanelli is a Certified Public Accountant with more than 25 years of experience at Deloitte. He will testify about the calculation of the Net Service Level Payments ("NSLPs"). The NSLPs are calculated based on Schedule D of the MSA, which sets out a formula that, put simply, considers when Fareva fulfilled Avon's orders and when Avon placed those orders. The formula in Schedule D required a somewhat complex set of calculations, given the delivery and order timing inputs and different multipliers per product. In drafting his expert report and reaching his opinion, Mr. Campanelli relied on data provided by Avon regarding forecasts, orders, and delivery data from the relevant time period. Fareva argues that Mr. Campanelli's opinion is not based on reliable data, that his calculations are inconsistent with the Schedule D formulas, and that the opinion improperly introduces contractual interpretations.

First, the data relied upon by Mr. Campanelli are sufficiently reliable. The discrepancies that Fareva points to do not rise to the level of being "speculative or conjectural or based on assumptions that are so unrealistic." *Hewitt*, 244 F. Supp. 3d at 385. Further, it was permissible for Mr. Campanelli to rely on the data provided by Avon. *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*, 769 F. Supp. 2d 269, 284 (S.D.N.Y. 2011) ("Experts need not have actually collected the data on which they base their conclusions in order to be credible."); *In re Payment Card Interchange Fee & Merch. Discount Antitrust Litigation*, No. 05-MD-1720 (MKB), 2022 WL 15053250, at *29 (E.D.N.Y. Oct. 26, 2022) ("imperfections in the data are properly attacked by the opposing party on cross-examination."). Even if Fareva's "claims as to factual inaccuracies" in the underlying data and assumptions used by Mr. Campanelli were assumed true, Mr. Campanelli "*at most* had a few faulty inputs to an otherwise topical opinion on [the NSLPs]—this is thus not a case in which 'there is simply too great an analytical gap between

the data and the opinion proffered.'" *Feliciano v. CoreLogic Saferent, LLC*, No. 17 CIV. 5507 (AKH), 2020 WL 6205689, at *3 (S.D.N.Y. June 11, 2020) (quoting *General Elec. Co. v. Joiner*, 118 S. Ct. 512, 519 (1997)).

Second, Fareva argues that Mr. Campanelli's calculations are inconsistent with the MSA because they differ from calculations performed by PwC, Avon's former expert. The discrepancy is explained by a reasoned choice in how Mr. Campanelli calculated the NSLPs, a choice which conformed with Fareva's position on calculations and resulted in a lower damages claim. This is not a basis for rejecting Mr. Campanelli's opinion.

Third, Mr. Campanelli did not rely on improper assumptions or legal interpretations of the MSA in his calculations. While Fareva is correct that an expert may not make legal determinations interpreting a contract, Mr. Campanelli's assumptions regarding the completeness of the data did not rise to the level of an impermissible contract interpretation. *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (an expert may not "usurp … the role of the trial judge in instructing the jury as to the applicable law.") Mr. Campanelli does not "opine on whether the text itself is ambiguous and what the text itself, based on textual analysis alone, says." *Novartis Pharma AG v. Incyte Corp.*, No. 1:20-CV-400-GHW, 2024 WL 3608338, at *8 (S.D.N.Y. July 29, 2024).

Mr. Campanelli will offer helpful testimony to calculate the complicated NSLP formulas, as applied to large, complex data sets. Fareva's concerns are the type that are best handled by cross-examination. Therefore, Fareva's motion to exclude the expert testimony of Mr. Campanelli is denied.

## II. Mr. Bersin's testimony is based on reliable data and reasonable comparisons.

Mr. Bersin is a Senior Managing Director at FTI Consulting with 30 years of experience as an expert witness and consultant on valuation, financial and forensic accounting, and economic damages. He will testify to Avon's lost profits attributable to the lost sales of products that Fareva failed to produce or timely deliver. Mr. Bersin's opinion is based on comparisons between Avon's performance before and after the breach and on a benchmark comparison of the performance of the broader industry. Mr. Bersin relied on a subset of Avon's North American sales data that captured the products produced by Fareva. Fareva argues that Mr. Bersin relied on unreliable and inaccurate data in his calculations, that he failed to disaggregate compounding factors, and his basis of benchmark comparison was unreliable.

First, Fareva argues that the sales data relied upon by Mr. Bersin included products that Fareva did not produce, that there were other indicia of unreliability, and that Mr. Bersin failed to independently verify the data. As with Mr. Campanelli, any inconsistencies, which Avon also disputes factually, do not rise to the level of being "speculative or conjectural or based on assumptions that are so unrealistic." *Hewitt*, 244 F. Supp. 3d at 385. And Mr. Bersin permissibly relied on the data provided by Avon in the ordinary course of business. *Cedar Petrochemicals, Inc.*, 769 F. Supp. 2d at 284. Fareva may raise its concerns about unreliability on cross examination to question the weight to which Mr. Bersin's opinion should be given. *Molly C. v. Oxford Health Ins., Inc.*, No. 21-CV-10144, 2024 WL 4850813, at *12 (S.D.N.Y. Nov. 21, 2024) ("Imperfect data, however, goes to the weight of the expert's opinion, not its admissibility, and is not grounds for exclusion.")

Second, Fareva argues that Mr. Bersin improperly attributed all of Avon's losses to Fareva, without disaggregating alternative sources of harm. This is insufficient to bar Mr. Bersin's

testimony. Mr. Bersin's report acknowledges alternatives, noting that Avon's oversales were declining and distinguishing between sales data in different product categories. ECF No. 473-1 ¶ 63. That Fareva disagrees with the results of Mr. Bersin's calculations in light of the compounding factors does not mean his opinion is unreliable and is not reason to exclude his testimony. *In re Zyprexa Prods. Liability Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) ("Expert testimony should not be rejected simply because the conclusions reached by the witness seem subjectively improbable").

Third, Fareva argues that Mr. Bersin relied on an insufficiently comparable benchmark for its benchmark analysis. Mr. Bersin relied upon the Statista data for the "Beauty & Personal Care market" in making his comparison. Fareva contends that using this market, without further analysis of the comparison between the companies within it, was improper, and that the market selected did not compare to Avon because the companies within did not use the same sales model as Avon. I disagree. Mr. Bersin acknowledged that he considered the brands within the personal care market to be comparable when deciding to use them. Bersin Dep. at 380:2–16. It is reasonable to conceive of Avon as a beauty and personal care brand selling similar products to those in the comparison group. Mr. Bersin was not required, as Fareva suggests, to draw a comparison to groups based solely on distribution model that offer entirely different products from Avon. Whether the basis of comparison is proper goes to the weight of the evidence, not admissibility. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility[] of his testimony.").

Therefore, I deny Fareva's motion to exclude the testimony of Mr. Bersin. The testimony on lost profits damages he will provide will be helpful in assessing the reasonableness

of the liquidated damages provision. Any concerns Fareva has with Mr. Bersin's testimony can be adequately raised on cross examination.

The Clerk of Court shall terminate ECF Nos. 470 and 476.

SO ORDERED.

Dated: July 7, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge